Houston, Justice:

Concurring in the general conclusion, already announced by the Chancellor and Judge Milligan, I will take occasion to state at length, and more fully perhaps than may now be necessary, the grounds of my opinion.
The Court below appears to have rested its decision of the case - mainly, if not exclusively, on the ground of the insufficiency of the defendant’s rdturn to the alternative writ of mandamus. But the first question to be considered *129 is the sufficiency of the case presented by the petitioner in his affidavit, to entitle him to the redress which he seeks through the instrumentality of, this writ; for if the petitioner had no legal right, or in other words, no right which . a court of law could recognize and enforce, to be admitted or restored to the place or office in question, then no writ of mandamus whatever should have been ordered in the case; and it therefore becomes, if such was the case, wholly immaterial here to consider whether the return was insufficient or not.
The petitioner’s case as stated in his application for the writ is to this effect: that he is a duly constituted elder minister in the church in question, which extends, as he alleges, into several of the States of the "Union, and that in virtue of his office, as such elder minister, he is the pastor, or minister in charge, of a religious society, incorporated under the general law for such purposes, by the name of The Union Church of Africans, in "Wilmington, in this State, and that as such it is his right to preach in the said church whenever he may see proper to do so, and to administer the ordinances and discipline thereof, and to exercise a pastoral charge over it. That the present corporate ' trustees of the church have forcibly excluded him from it, and have debarred and prevented him Horn exercising the rights and functions appertaining to his office; and that, having no other legal remedy in the premises, he prays the Court to issue a writ of mandamus directed to the said church, commanding them to admit him to preach in the church whenever he may see proper to do so, and to exercise the rights before stated, or show cause to the contrary.
The statement of facts contained in his petition is full and particular, and he sets forth at much length such portions of the constitution, discipline and usages of the church as he conceives to be necessary to establish the official character in which he appears before the Court, and the ecclesiastical rights and privileges which he claims to pertain to it. But it contains no allegation, and there is no proof, that there is any emolument or compensation *130 of any kind attached to the office of elder minister or preacher in charge of the church in question, or that there is any temporal right or benefit, stipend or salary dependent upon or incident to it. On the contrary, it conclusively appears that the claim and right upon which he re- • lies is purely spiritual and ecclesiastical in its nature, and that it involves no legal or temporal right whatever; and it is now well settled, both in this country and in England, that when such is the case mandamus will not lie. It was so held in the case of Rex v. Blooer, 2 Burr. 1043. In that case the application was to restore the party to the office of curate of the Chapel of Calton. The Chapel was endowed with lands, and the curate of it had a stipend. Lord Mansfield, in deciding the case, remarked: “ This is a mere temporal question,” and afterwards added: “ A. mandamus to restore is the true specific remedy where a person is wrongfully dispossessed of any office, or function which draws after it temporal rights, in all cases where the established course has not provided a specific remedy, by another form of proceeding.” “Here are lands,” he also remarks, “ annexed to this Chapel, which belong to the chaplain in respect of his function;” and adds, by way of conclusion: “ Where there is a temporal right, the Court will assist by way of mandamus, because it is a specific remedy.” The same principle was affirmed and the same distinction recognized in the subsequent case of Rex v. Baker et al., 3 Burr. 1265. The writ in this case was to restore a Protestant dissenting minister, or preacher, to the use of the pulpit of a meeting-house which had been deeded in trust,, together with a garden, to the use of a congregation and preacher; and Lord Mansfield held that the writ would lie, for the same reason and in the same language adopted in the decision before cited: “That where there is a temporal right, the Court will assist by mandamus.” He speaks of the “ endowment of'the pastor-ship,” and afterwards adds: “ Here is a function with emoluments and no specific legal remedy.”
In the cases above cited, the writ was granted on the *131 ground .that there were temporal rights or emoluments connected with the function or office. I shall now cite a few cases in which the writ was refused, because there were no such rights or emoluments appurtenant to the place.
The first of these, to which I shall refer, is the ease of The King v. The Bishop of London, 1 Wil. R. 11. This was an application for a writ of mandamus to command the defendant to grant a license to the relator, to preach as lecturer of the parish of St. Ann, Westminster. There were no emoluments or stipend of any kind connected with the office; and, after taking time to consider of the case, the Court discharged the rule, Lee, Chief Justice, observing: “ It appears that this parish has no fixed stipend for a lecturer, but merely depends upon the voluntary contributions of the inhabitants; nor does it appear that there is any certain custom, as to electing a lecturer. Therefore, as there is no certain custom, nor does it appear that either of these persons (the claimants of the place) have the demand of one penny from any parishioner, or anybody whomsoever, but that the contribution to a lecturer is merely voluntary, the question is whether this Court will at all interpose in this matter; and we are of the opinion there is no foundation at all in this case to ground any right upon.” The next is the case of The King v. The Churchwardens of Cloyden, 5 T. R. 713; in this instance the application was for a writ to admit the party to the office of vestry clerk of the parish, but there were no fees or salary annexed to it, and Lord Kenyon, in discharging the rule, rests the decision on this ground among others.
This principle of law has also been clearly recognized and ruled in this country. The case of Runkle v. Winemiller, 4 Harr, and McHenry’s R. 429, is a leading authority on that point. There the object of the writ of mandamus was to restore Mr. Kunkle to the place and function of minister of the congregation of a certain church in Fredericktown, and to the use of the pulpit thereof, with all the privileges and advantages appertaining to the place and *132 function. The affidavit alleged that he had been duly inducted into the possession of his function of minister of said church and the einoluments thereto belonging, and that those emoluments consisted of the enjoyment of a parsonage-house, eighteen cords of wood annually, and an annual salary of eighty pounds of current money. The case was sustained by as able counsel as the bar of Maryland has produced, Luther Martin and William Pinckney, and the. Court held, after full argument, that a writ of mandamus would lie. Chase, Judge, in deciding it, remarked: “ The Court are of the opinion that every endowed minister, of any sect or denomination of Christians, who has been wrongfully dispossessed of his pulpit, is entitled to the writ of mandamus to be restored to his function, and the temporal rights with which it is endowed;” and again, “ The office or function of minister must be endqwed, or a mandamus to restore cannot be granted. Endowment does not necessarily mean that lands and tithes must be annexed to the living, in exclusion of any other means of support; but a stipend, rent, emoluments and advantages of any kind given and secured to the minister during the time he shall officiate as minister, as a compensation for his services, is an endowment;” “the right to the function as the substancé, draws to it the emoluments as appertaining to it;” and concludes with this remark: “ Here there is a function with emoluments, and unless the Court interpose and grant a mandamus to restore him to his pulpit, and the. use of the church, he will be without any specific remedy to recover the pulpit, and without remedy to recover the emoluments stipulated to be furnished; for the emoluments are annexed, and appurtenant to the function, and unless he is restored to it he will be without remedy to receive them.”
Upon the authority of these cases, and the principle which they have so clearly established in regard to this writ, I am of the opinion that the Court below erred in entertaining the application of Ellis Sanders for a writ of mandamus in this case. There is no endowment, no emo *133 lament alleged or shown to be annexed to the pastoral charge to which he claims to be entitled,-, and from which he complains that he has been and is still excluded by the trustees; and as there is no temporal or legal right shown to be involved in the matter, and as it appears that the only right which he asserts in regard to the office and functions claimed by him is merely an ecclesiastical or spiritual right, it is not a case for the interposition or within the jurisdiction of a court of law, and consequently it was not a case in which a writ of mandamus should have issued below. For it is not the province of a court of law to enforce such lights. A court of law cannot enforce a merely moral, or a purely equitable right, much less a merely spiritual or ecclesiastical right. When, however, the possession or enjoyment of a temporal right, as the-enjoyment of an endowment or an emolument is attached to the ecclesiastical office and its functions, and is consequently dependent upon the exercise and enjoyment of the spiritual right, the law, out of the regard which it entertains for the temporal right and benefit of which it has jurisdiction, will interpose by mandamus to restore the party wrongfully excluded from his ecclesiastical functions, where he has no other specific legal remedy for the temporal right, to prevent a failure of justice in this respect, which would otherwise occur.
I' would simply say, in addition to this, that I do not consider that the fact that the trustees of this church were incorporated under the general law to take charge of the temporalities df the church, affects this principle of law as applicable to the case. I do not deem it necessary to refer to other questions which were raised and discussed in the argument, as the principal point which I have already considered disposes of the whole case. I am therefore of opinion that the proceedings of the Court below in this case must be reversed.